The Law Offices Of
**GERALD C. RUTER**
PROFESSIONAL CORPORATION

9411 Philadelphia Road, Suite O
Baltimore, Maryland 21237
(410) 238-8000
Fax:  (410) 238-0597
E-Mail: ruterlaw@verizon.net

September 24, 2025

Honorable Stephanie A. Gallagher
United States District Judge
101 W. Lombard Street
Baltimore, Maryland 21201

**Re:  United States of America v. Reginald Davis
Case No. SAG-23-269**

Dear Judge Gallagher:

The Court is scheduled to sentence Mr. Davis in the above captioned case on October 6, 2024. This letter is written on behalf of Mr. Davis to assist the Court in its determination of a reasonable sentence in this case.

### Background

Mr. Davis was charged by Superseding Information with one Count Misdemeanor Bank Theft, in violation of 18 U.S.C. 2113(b) on June 27, 2025. It is anticipated that his Indictment returned on August 3, 2023, charging wire fraud and money laundering will be dismissed. He was arrested on August 9, 2023, and released with Pretrial Services supervision. He has remained on release since that date.

On June 27, 2025, Mr. Davis appeared before Magistrate Judge Erin Aslan and entered a plea of guilty to the above charge. Before entering his plea, the Court advised him of his right to appear before a district judge pursuant to Fed. Rule 58. Mr. Davis stated on the record that he understood that right and pursuant to Rule 58(A), he waived that right and consented to entering his plea before a Magistrate Judge.

He now appears for sentencing on October 6, 2025.

### Plea Agreement

Mr. Davis stipulated that he was the Interim Chief Executive Officer of Strong City Baltimore at the time of this

Page Two
Honorable Stepahanie A. Gallagher
September 24, 2025

offense. He admitted that with the close assistance of others he applied for a Payroll Protection Program loan from a federally insured bank. The application required the applicant to attest that the monies advanced to Strong City Baltimore would be used for specified purposes. At the time the application was executed, Mr. Davis and others were planning to use some of the money to pay back money it held for other non-profits that had requested their money be returned to them.

    The parties agreed that USSG 2B1.1 partially determines the applicable offense level and further agreed that Mr. Davis was entitled to a two-level downward adjustment pursuant to USSG 3E1.1 and a further downward adjustment of two levels pursuant to USSG 4C1.1. The plea agreement states no loss amount.

    The parties also agreed that a sentence of **time served** is the appropriate sentence to be imposed. The parties agreed the Court was free to impose a fine or set conditions of supervised release or probation.

    Mr. Davis has waived his right to appeal his conviction and any sentence the Court may impose.

    Finally, the Plea Supplement indicates that this is not a cooperation agreement.

### The Pre-Sentence Report

    Mr. Davis reviewed the PSR with counsel on September 24, 2025. The changes are of a minor nature and will not alter the guideline calculations. They are as follows:
    **Paragraph 3** – The plea was taken before Magistrate Judge Erin Aslan;
    **Paragraph 14** – The Count of conviction is 1, not 18;
    **Paragraph 47** – Although this may not require an addition to the PSR, Mr. Davis cancer screening continues for one more year at which time health care providers may opine he is cancer free;
    **Paragraph 51** – The counseling center referenced in this paragraph is Wendt Center for Loss and Healing, located in Washington, D.C.;

Page Three
Honorable Stephanie A. Gallagher
September 24, 2025

    **Paragraph 64** – The name of the university where Mr. Davis received his bachelor's degree should be University of the District of Columbia;
    **Paragraph 65** – The name of the high school referenced is George Westing House Career Academy, in Chicago, Illinois.

    The PSR shows a total of **0 criminal history points** and a **criminal history category** of **I** at paragraph **28**.

    The advisory guidelines were determined to be **0 to 6 months** at paragraph **79**. The PSR also noted that pursuant to USSG 5C1.1(b) or (c)(3), a sentence of imprisonment is not appropriate. See paragraph **80**.

## 18 U.S.C. 3553(a) Factors

    **The Court should consider: 1) the nature of the offense and 2) the circumstances of the offense.**

    1) **Nature of the offense –** The count of conviction is a Class A misdemeanor. The maximum sentence is one year incarceration. The statement of facts in support of the guilty plea outlines the nature of the offense. The admitted conduct is moderately serious when one attempts to quantify the scope of crime in our criminal justice system.

    2) **Circumstances of the offense –** The circumstances of the offense are significant and present the reason this case started as a 20-year felony and has been resolved as a one-year misdemeanor. Mr. Davis became employed with Strong City Baltimore in November of 2019. He knew of Strong City as an extremely large non-profit organization that manage dozens of what are called "fiscally sponsored" organizations. Fiscally sponsored organizations were non-profits that did not wish to build their own infrastructure of buildings, employees, communications, accounting and legal, etc. Instead, those organizations that wished to have a positive impact on their community, used Strong City to provide all those important services in exchange for paying a fee to Strong City. For some fiscal sponsors, Strong City was authorized to use the

Page Four
Honorable Stephanie A. Gallagher
September 24, 2025

funds received in any manner Strong City saw fit. In other instances, the fiscal sponsor gave specific instructions to Strong City on where the funds given could be used. When Mr. Davis joined Strong City as Chief of Staff he had no knowledge of the fiscal position of the organization. His duties were strictly overseeing the employees of Strong City and assuring that their assigned work was being done effectively. His superior and the CEO of Strong City, Karen Stokes, had been the head of the organization for over 15 years and she resigned with little notice after Mr. Davis had been on the job for five months. Several other key and experienced leaders of Strong City left at the same time as did Ms. Stokes. The Board of Directors named Mr. Davis Interim CEO in April of 2020. The Board advised Mr. Davis they wanted an audit of Strong City's books due to concerns it had.

Mr. Davis employed an accounting firm to undertake this responsibility. Following an evaluation of Strong City's books, it was learned that Strong City could not survive fiscally, due to the simple fact that more money was being spent than income coming in. It was discovered that fiscal sponsored monies were not properly separated in such a way that it was difficult, if not impossible, to discern the status of the fiscal sponsors' money being held in trust by Strong City. Mr. Davis and the Board were committed to winding down fiscal sponsorship as a means by which to serve the Baltimore community and use other means to do so.

The situation was exacerbated as COVID-19 halted much of the work non-profits were able to perform; the money Strong City was receiving from them; the ill-advised purchase of the building Strong City acquired; and the money owed to it by multiple organizations that were not repaid.

This was the situation Mr. Davis inherited from his predecessor. It ended when Mr. Davis electronically signed the application for a PPP loan which brings him before this Court.

Mr. Davis signed the application while in Chicago, where he was burying a brother (his third brother murdered) and stepfather, both of whom were murdered in the streets of Chicago

Page Five
Honorable Stephanie A. Gallagher
September 24, 2025

within 10 days of one another and while Mr. Davis was traveling back and forth to Chicago caring for his terminally ill mother. His mother died shortly after Mr. Davis eulogized his brother and stepfather.

**The Court should consider: 1) the history of the defendant and 2) the characteristics of the defendant.**

**1) The history of the defendant –** Mr. Davis is 42 years of age. He was raised primarily by his mother, Judy Kemp. He is one of three children born to his mother and partner, Mr. Reginald Davis, and half siblings that he is close to as well. Mr. Davis's father suffered from drug abuse and was in jail from time to time. He lived in public housing in Chicago where he was born and raised. At age 12, while still living in public housing, he moved to a better section of Chicago known as Humble Park. His mother always worked full time in various capacities to care for her children. He was surrounded by aunts, uncles, and cousins.

Mr. Davis graduated from high school in Chicago. He received his bachelor's degree from the University of Washington, D.C. in 2011 and completed a certificate program in non-profit management in January 2012. From 2013 to 2015, he attended a public management graduate degree from Johns Hopkins University in Washington, D.C. He was just four classes away from finishing the program but stopped when a brother and half-brother were murdered in Chicago. Recently, while on release in this case, he has taken two classes in a master's degree program at the University of Maryland Global Campus in Eldridge, Maryland.

Mr. Davis has been gainfully employed throughout his adult life. He was employed as Director of Public Policy for the National Human Services Assembly in Washington, D.C. from 2014 to 2015. He worked for five years at the Bizzell Group in Lanham, Maryland as a Program Manager from 2015 to 2019. He worked for Strong City Baltimore from 2019 to 2022. After leaving Strong City he worked as a driver for DoorDash and Amazon Flex. He recently opened his own business known as Mission Advisors, LLC.

Mr. Davis has never married and has no children. He has much interaction with his siblings and extended family members.

Mr. Davis was diagnosed with cancer that was discovered while he was undergoing surgery. A segment of his intestines was removed and he maintains six-month monitoring of his cancer. At the end of next year, should there be no evidence of cancer he will be released from the doctor's care. Mr. Davis has been in treatment for grief counseling from 2015 and 2016 following the murders noted above. Mr. Davis has been a patient of Resonate Counseling Services since 2021, again mostly following the loss of his brother, stepfather, and mother earlier in 2021. He still sees her weekly for psychotherapy. Mr. Davis had a mental health evaluation at Bright Horizons on September 1, 2023. He was diagnosed with prolonged grief disorder; depression, unspecified; pseudo bulbar; and antisocial personality disorder. Mr. Davis was not advised of the last two diagnoses noted. He was seen only one time at Bright Horizons.

Mr. Davis admitted to consuming alcohol only socially and no more than twice monthly. He used marijuana a few times yearly and last used it in December of 2023. Bright Horizon also diagnosed him with "cannabis use, unspecified; and alcohol use, unspecified." U.S. Probation has had Mr. Davis counselor at Resonate combine substance therapy with mental health treatment.

2) **The defendant's characteristics –** Mr. Davis is an extraordinary person who has accomplished much and whose character is demonstrated by the letters attached alphabetically by the writer's last name. **Exhibit 1A** is a letter from Jenee Barnes, a federal employee who writes that she is surprised about these charges given "Reginald's reverence for the law and policy." She has witnessed first-hand his touching "countless lives as a mentor, a friend, and a community leader." **Exhibit 1B** is a letter from Anton C. Bizzell, Chairperson and CEO of the Bizzell Group who wrote he first met Mr. Davis when Mr. Davis was inducted into the Alpha Phi Alpha Fraternity. Dr. Bizzell recounted the extraordinary work Mr. Davis did for his company during his employment that demonstrated his commensurate leadership who "is a man committed to improving the lives of others." **Exhibit 1C** is a letter from George Anthoney Clarke who is also a friend and fraternity brother of Mr. Davis. He

Page Seven
Honorable Stephanie A. Gallagher
September 24, 2025

describes Mr. Davis "as the rock for his family" and explained why. He states that "Reginald has been a man who is guided by his love for family, respect for the law and truth, his self-respect, and his commitment to his community." **Exhibit 1D** is a letter from Danielle Conway, who worked with Mr. Davis who attests that "I worked closely with Reginald and came to know him as a leader who exemplifies faith, integrity, and a genuine commitment to his community." She said in all things he was kind, honest, dedicated, generous, devoted, caring and more. **Exhibit 1E** is a letter from Lexington Andre Culpepper. He describes Mr. Davis as "Resilient. Compassionate. Dependable. A loyal friend. A source of strength." Dr. Culpepper recounted some things Mr. Davis does for his present mentee. **Exhibit 1F** is a letter from Ashley Davis, Mr. Davis sister. She says that Mr. Davis is the leader of their family with their mother. She says, "Reginald has been that shelter, supporter, shoulder, therapeutic, loving, helping hand I need now, his kindness, loyalty, devotion to my family." **Exhibit 1G** is a letter from Larry Donnell Davis, a school counselor for 45 years. He has known Mr. Davis for 12 years and he points to Mr. Davis's leadership in his family during the time of the murders of his stepbrother, stepfather, younger brother and niece where he made funeral arrangements, cared for his dying mother, and dealt with the grief of those remaining in the family. **Exhibit 1H** is a letter from Karen DeCamp who works for a Baltimore non-profit and began working for the Greater Homewood Community Corp., in 2007 that later became Strong City Baltimore until she left Strong City in 2020. She played an integral part in the education program at Strong City and the after-school program at the Club at Collington. She recounts that as soon as Mr. Davis was hired as Chief of Staff, he became immersed in "The Club" by mentoring the most at-risk boys which continues to this day. She [pointed that to this day Mr. Davis provides support to three young men, providing "stability, kindness, meals, an open ear, a calm demeanor, help at school, and helping with difficult life situations." Last year he and Vanessa Williams drove one of Mr. Davis mentees to college in South Carolina. The young man just started his sophomore year. **Exhibit 1I** is a letter from Marquitta Harris. She shared how years ago she was in a dangerous relationship with a person; she called Mr. Davis, he drove with a friend over 300 miles to pick

her up, pack her belongings, and move her to a safe place. **Exhibit 1J** is a letter from Danista E. Hunte, the president and CEO of the Maryland Philanthropy Network. She has worked most her adult life in service of the underprivileged. She worked closely with him as he was a board member of Child First while she served as the executive director. Mr. Davis served as a board member for five years. She recounted the critical role Mr. Davis played as a member of that board. **Exhibit 1K** is a letter from Chad Kee, a brother who is a member of the same fraternity earlier discussed. He states he has "observed Reginald consistently lead with honesty, compassion, and dedication…" He states that Mr. Davis provides "stability, hope, and consistency" to his family and friends. **Exhibit 1L** is a letter from Fr. Joe Muth who is the Chaplain at the University of Notre Dame of Maryland. He was a volunteer at the after-school program at the Club at Collington. He saw Mr. Davis "show up" at the hospital if a child had been injured, "their court cases to give testimony to the goodness of these students." Fr. Muth said that many of the children viewed Mr. Davis as a father figure to them "and turned to him for comfort, advice, or counsel." **Exhibit 1M** is a letter from Terrance Narcisse, the CEO of the East Harris County Empowerment Council, a nonprofit from Houston, Texas. He has known Mr. Davis for 14 years and finds "him as one of the most selfless and dependable people I have ever met." Like so many other writers who have attested to his character he is aware first-hand of all that Mr. Davis has done for innumerable families in need of groceries, transportation, clothing, and encouragement and love. **Exhibit 1N** is a letter from Shaundrece Rangel who is a Chicago native and has known Mr. Davis for over 30 years, dating back to high school. She states that Mr. Davis has always been a positive influence on her and others lives. **Exhibit 1O** is a letter from Keith Riley, the CFO of Bizzell US. He knows Mr. Davis "as a person of loyalty, humility, and quiet generosity." He recalled seeing Mr. Davis garner resources for a person about to lose their house and succeeding in his endeavors. He has seen Mr. Davis provide countless hours of mentoring and providing school supplies to students in need. **Exhibit 1P** is a letter from Calvin E. Ruffin Jr. He has known "Mr. Davis for 11 years and has witnessed qualities such as integrity, compassion, and a willingness to take responsibility

Page Nine
Honorable Stephanie A. Gallagher
September 24, 2025

for personal actions." Dr. Ruffin is the Director of Career Academies at Ballou High School, in Washington, D.C. He knows Mr. Davis to be "a community advocate, volunteer, mentor, and organizer." He says Mr. Davis "is the backbone for his family, friends, and loved ones…" He acknowledged that "Mr. Davis is the stability and foundation for many in his life…" **Exhibit 1Q** is a letter from Khama A. Sharp who has been an attorney for over 15 years and now serves as an administrative law judge for a state commission. He has known Mr. Davis for over 20 years and knows Mr. Davis to be "one of the most honorable men I have had the opportunity to engage with in my life." He outlined the status Mr. Davis holds in his family as being "the one responsible for handling the administrative needs of his family." He took his younger brother for a time to assist him in his life. He cared for his mother. He cares for his sisters. He cares for anyone in need. **Exhibit 1R** is a letter from Joshua Thomas who works for the Washington, D.C. government as a Compliance Manager. He too, is a brother member of the fraternity as referenced above by others. He recalls Mr. Davis "honesty, loyalty, and devotion to his family" during the funeral of Mr. Davis's mother. He states Mr. Davis always shows his "unwavering support and quiet wisdom… his kindness, humility, and a deep commitment to doing what is right by others." **Exhibit 1S** is a letter from Ryan Turner, President and Justin Morrisette, the vice president of Alpha Phi Alpha, located in Baltimore. They see Mr. Davis as humble and compassionate, "friendly and reliable", "who believes deeply in both tradition and humanity." They spoke of the Beautillion program of which Mr. Davis has held a prominent interest with huge successes. Mr. Turner and Mr. Morrisette value how Mr. Davis "has a gift for making people feel seen, valued, and supported." **Exhibit 1T** is a letter from M. Vanesa Williams, a person with whom Mr. Davis worked while at Strong City. She states, "I have witnessed firsthand Reginald's honesty and work ethic. He treats everyone with respect, no matter what their background or circumstances." She adds he is a "role model- always willing to lend a hand, listen without judgment, and offer guidance when it is most needed." **Exhibit 1U** is a letter from Shanita Robinson, the older sister of Mr. Davis. She has "watched him grow into a man of incredible strength, loyalty and compassion." She says Mr. Davis "has been a constant source of

Page Ten
Honorable Stephanie A. Gallagher
September 24, 2025

guidance, support, and love… as well as generosity, kindness, and unwavering commitment to family…"

**The Court should determine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense.**

A sentence of **time served with six months of probation** will not deflect from the fact that this offense is serious. The Court should find this sentence will promote respect for the law and it will adequately punish Mr. Davis for his involvement in this criminal activity.

**The Court should determine the need for a sentence to afford adequate deterrence to criminal conduct.**

Counsel is of the opinion that it is impossible to ever argue that a non-jail term or a short jail term would be *more likely* to deter criminal conduct than a longer term of incarceration. However, the statute requires that the sentence provide *adequate deterrence* and nothing more. Given the facts and circumstances of this offense, a total sentence of **time served with a period of probation** will represent a sentence designed to punish Mr. Davis, assure us that others will be adequately reticent to engage in such activity and deter Mr. Davis from further criminal activity. The Court should also find that Mr. Davis is not in a financial position to pay a fine because he has been unable to pay the necessities of life since charges were initially brought in 2023.

**The Court should determine the need for a sentence to protect the public from further crimes of the defendant.**

The Court should find that Mr. Davis poses no danger to the public and is unlikely to commit any offenses in the future.

**The Court should determine the need for a sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Page Eleven  
Honorable Stephanie A. Gallagher  
September 24, 2025


The Court should find that Mr. Davis is not in need of any of the programs or services the Bureau of Prisons may offer.

    **The Court should determine the need for a sentence that will avoid unwarranted sentence disparities among defendants with similar records that have been found guilty of similar conduct.**

    It is believed and therefore averred that a sentence of **time served with a term of six months' probation** will not present disparities among similarly situated defendants with similar records. The statistical data referenced in the PSR at page 18 confirms this.

    This sentence adequately accounts for all sentencing factors set forth in 18 U.S.C 3553(a), is sufficient but not greater than necessary to accomplish the purposes of sentencing and represents a reasonable sentence.

    With the Court's permission, Mr. Davis would like to call Anton Bizzell, Margaret William, James Davis or Andre Davis and Fr. Joe Muth to attest to his character. We will request no more than 15 minutes for this presentation.

                                Respectfully Submitted,

                                /S/ Gerald C. Ruter

                                Gerald C. Ruter


Filed by ECF under Seal  
Copied to: AUSA Ariel Evans and AUSA Joseph Wenner